# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TRUSTEES OF THE PLUMBERS AND
PIPEFITTERS LOCAL NO. 333 HEALTH
AND WELFARE FUND, *et al.*,

               Plaintiffs,                           No. 12-10977

v.                                           Hon. Gerald E. Rosen

GRINDALL & WHITE, INC. and
JEFF WHITE,

               Defendants.
_____/

## OPINION AND ORDER GRANTING
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____September 30, 2013_____

PRESENT:  Honorable Gerald E. Rosen
                      Chief Judge, United States District Court

## I.  INTRODUCTION

In this suit, the Plaintiff employee benefit funds allege that Defendant Grindall &

White, Inc. and its owner, Defendant Jeff White, have failed to make certain fringe

benefit contributions called for under a collective bargaining agreement ("CBA") entered

into between Grindall & White and Local Union No. 333 of the United Association of

Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United

States and Canada (the "Union").  In support of their effort to collect these allegedly

overdue fringe benefit contributions, Plaintiffs have asserted claims under the federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* and the Michigan Builders Trust Fund Act ("MBTFA"), Mich. Comp. Laws § 570.151 *et seq.* On July 12, 2012, the Plaintiff funds and the corporate Defendant, Grindall & White, agreed to the entry of a consent judgment in the amount of $137,421.39, leaving only Plaintiffs' claims against the individual Defendant, Jeff White, to be resolved.

Presently before the Court is Plaintiffs' motion for summary judgment, through which Plaintiffs seek a determination as a matter of law that Defendant Jeff White is liable for the full amount of the allegedly delinquent fringe benefit contributions established through an examination of Defendants' books and records. Defendant White has filed a response in opposition to Plaintiffs' motion, arguing (i) that Plaintiffs' state-law claim is preempted by federal law, (ii) that Plaintiffs' effort to collect from him is barred by the doctrine of unclean hands, (iii) that the record fails to establish a basis for holding Defendant White individually liable under ERISA, (iv) that Plaintiffs have failed to establish the intent to defraud that is a prerequisite to recovery under the MBTFA, and (v) that Plaintiffs have failed to establish the necessary link between payments made to the corporate Defendant for specific projects and the non-payment of fringe benefit contributions on behalf of employees who worked on these specific projects.

Having reviewed the parties' briefs in support of and opposition to Plaintiffs' motion, their accompanying exhibits, and the remainder of the record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these

2

written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Plaintiffs' motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Jeff White is the sole owner and president of Defendant Grindall & White, Inc., a mechanical and plumbing contractor that ceased operations in March of 2010. In his answer to the complaint, Defendant White has admitted that his company, Grindall & White, was obligated under a CBA entered into with the Union to make timely fringe benefit contributions to the Plaintiff employee benefit funds for each employee covered by the CBA. (*See* Complaint at ¶¶ 6, 8; Answer at ¶¶ 6, 8.)

According to an audit conducted in May of 2010, Defendant Grindall & White owed $218,274.47 to the Plaintiff funds. (*See* Plaintiffs' Motion, Ex. 1, 5/17/2010 Audit Report.) This audit was updated in November of 2012 to reflect payments received and other credits since the initial audit, and this revised audit reflects $197,467.47 in allegedly unpaid fringe benefit contributions. (*See* Plaintiffs' Reply, Ex. 2, 11/19/2012 Revised Audit Report.)

On July 12, 2012, this Court entered a consent judgment in favor of the Plaintiff funds and against Defendant Grindall & White in the amount of $137,421.39. Through the present motion, the Plaintiff funds seek the entry of a judgment in their favor and against Defendant Jeff White in the amount of $197,467.47. (*See* Plaintiffs' Motion at 1;

3

Plaintiffs' Reply Br. at 3 n.1.)

## III.  <u>ANALYSIS</u>

### A.     **The Standards Governing Plaintiffs' Motion**

Through the present motion, the Plaintiff employee benefit funds seek an award of

summary judgment in their favor and against individual Defendant Jeff White on

Plaintiffs' federal ERISA claims and their state-law claim under the MBTFA.  Under the

pertinent Federal Rule governing Plaintiffs' motion, summary judgment is proper "if the

movant shows that there is no genuine issue as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As the Supreme Court has

explained, "the plain language of Rule 56[] mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,*

477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  In addition, where the moving parties

— here, the Plaintiff funds — seek an award of summary judgment in their favor on a

claim or issue as to which they bear the burden of proof at trial, the parties' "showing

must be sufficient for the court to hold that no reasonable trier of fact could find other

than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.

1986) (internal quotation marks, citation, and emphasis omitted).  The central issue under

Rule 56 is "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.,* 477 F.3d 854, 861 (6th Cir. 2007). Yet, the nonmoving party may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "[a] mere scintilla of evidence is insufficient" to withstand a summary judgment motion; rather, "there must be evidence on which the jury could reasonably find for the non-moving party." *Smith Wholesale,* 477 F.3d at 861 (internal quotation marks and citation omitted).

**B.      Defendant White Is Personally Liable Under ERISA for the Fringe Benefit Contributions Owed by His Company to the Plaintiff Funds.**

In Count III of their complaint, the Plaintiff funds seek to hold Defendant Jeff White individually liable for the failure of his company, Defendant Grindall & White, to pay the fringe benefit contributions allegedly owed by this company to the funds on behalf of corporate employees covered by the CBA. This claim of personal liability for a

corporate obligation rests on the premises (i) that the Plaintiff funds are employee benefit plans governed by ERISA, (ii) that Defendant White qualifies as a plan fiduciary under ERISA, and (iii) that Defendant White breached his fiduciary duties to the Plaintiff funds by directing that monies owed to the funds as fringe benefit contributions were instead paid to other creditors.  In opposing Plaintiffs' request for summary judgment as to this claim, Defendant White does not contest that the Plaintiff funds are governed by ERISA, nor does he dispute, at least as an abstract principle, that the diversion of fringe benefit contributions owed to these funds would constitute a breach of the duties owed by an ERISA fiduciary.  Nonetheless, Defendant White contends that summary judgment is unwarranted as to this claim because Plaintiffs have failed to identify a basis for concluding that he is an ERISA fiduciary.  As discussed below, the Court finds as a matter of law that Defendant White qualifies as an ERISA fiduciary under the record presented in this case.

Under ERISA, an individual is a fiduciary with respect to an employee benefit plan to the extent that "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."  29 U.S.C. § 1002(21)(A).  Another ERISA provision, in turn, imposes personal liability on fiduciaries as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary

6

> which have been made through use of the assets of the plan by the
> fiduciary, and shall be subject to such other equitable or remedial
> relief as the court may deem appropriate.

29 U.S.C. § 1109(a).  Finally, a fiduciary must "discharge his duties with respect to a plan

solely in the interest of the participants and beneficiaries."  29 U.S.C. § 1104(a)(1).

In this case, Defendant White has testified that at all relevant times, he was the

sole owner and president of Defendant Grindall & White.  (*See* Plaintiffs' Motion, Ex. 2,

White Dep. at 5.)  Moreover, Mr. White admitted during discovery that he was the sole

operator of the Defendant corporation and managed its day-to-day affairs at all relevant

times from July of 2005 until the company ceased operations in March of 2010.  (*See*

Plaintiffs' Motion, Ex. 3, Response to Request for Admission No. 3.)  In addition,

Plaintiffs have produced an audit and corresponding worksheets reflecting that Defendant

Grindall & White owes over $197,000 in fringe benefit contributions for the period from

November of 2009 through March of 2010, (*see* Plaintiffs' Motion, Ex. 1, 5/17/2010

Audit Report; Plaintiffs' Reply, Ex. 2, 11/19/2012 Audit Report), and Defendant White

has made no effort to refute this record of unpaid contributions in any respect.  Finally,

Plaintiffs point to the records of the corporate Defendant as evidencing that various

creditors were paid from funds in the company's bank account during the time period that

employee benefit contributions were owed to the Plaintiff funds, (*see* Plaintiffs' Motion,

Ex. 5 (company checks), Ex. 6 (company check registers), Ex. 7 (company records

evidencing payments to suppliers, contractors, and vendors)), and Defendant White again

fails to challenge this evidence in any respect.

As this Court recently observed, the "[c]ourts routinely hold that this type of control" over company assets and use of these assets to pay creditors over employee benefit plan beneficiaries establishes "that the [corporate] officer-defendant is an ERISA fiduciary and can be held personally liable for ERISA contributions." *Trustees of Detroit Carpenters Fringe Benefit Funds v. Nordstrom,* 901 F. Supp.2d 934, 942 (E.D. Mich. 2012) (collecting cases). In *Nordstrom,* as here, the record showed (i) that the individual defendant was the sole owner and officer of the corporate defendant, and "made all of the day-to-day decisions relating to which creditors of [the corporate defendant] were paid and when they were paid," (ii) that the corporate defendant failed to make employee benefit contributions to the plaintiff funds during the relevant time period, and (iii) that the individual defendant "elected to pay [the corporate defendant's] general creditors instead of making contributions to the plaintiff funds." 901 F. Supp.2d at 941-42. Under this record, this Court reasoned that "from the moment [the individual defendant] knowingly failed to make required contributions to the Funds for his workers, he exercised control respecting disposition of plan assets, held those funds as a fiduciary, and . . . was required to discharge his duty solely in the interest of the participants and beneficiaries of the Funds." 901 F. Supp.2d at 942 (internal quotation marks and citations omitted). Because the record in the present case is materially indistinguishable from the evidence before the Court in *Nordstrom,* it readily follows that Defendant White here, like the individual defendant in *Nordstrom,* is subject to personal liability for the employee benefit contributions owed by his company to the Plaintiff funds.

8

In an effort to avoid this result, Defendant White relies principally on the Sixth Circuit's unpublished decision in *Sheet Metal Local 98 Pension Fund v. AirTab, Inc.,* No. 09-3121, 482 F. App'x 67 (6th Cir. May 29, 2012). In *AirTab,* 482 F. App'x at 69, the court held that the owner and president of the corporate defendant and a "coordinator" for this company did not qualify as ERISA fiduciaries, and thus were not personally liable for the company's failure to make employee benefit contributions to the plaintiff ERISA plans. In so ruling, the Sixth Circuit explained that the individual defendants were "not defined as fiduciaries in any documents" governing the ERISA plans, and thus were not "made aware of their potential status as fiduciaries." 482 F. App'x at 69; *see also Iron Workers' Local No. 25 Pension Fund v. Future Fence Co.,* No. 04-73114, 2006 WL 2927670, at *3 (E.D. Mich. Oct. 12, 2006) (holding that the individual defendant could not "be held personally liable for the unpaid contributions" owed by the corporate defendant because the plaintiff funds had not "shown that he ever was made aware of his status as a fiduciary"). The court further reasoned that the individual defendants' "alleged refusal to pay the funds as required under [a collective bargaining agreement entered into by the corporate defendant] d[id] not rise to the level of exercising discretionary control or authority such that fiduciary status attaches," because the "[m]ere possession or custody over a plan's assets does not automatically lead to fiduciary status." 482 F. App'x at 69 (internal quotation marks and citation omitted). Likewise, in this case, Defendant White states in an affidavit that he was "never aware of any personal obligations under the ERISA law," (Defendant's Response, Ex. A, White Aff. at ¶ 15),

9

and he further argues that the mere failure of Defendant Grindall & White to make fringe benefit contributions after it "ran out of money" does not provide a basis for charging him with individual liability as an ERISA fiduciary, (Defendant's Response Br. at 14-15).

In *Nordstrom,* 901 F. Supp.2d at 940-41 n.2, however, this Court distinguished the Sixth Circuit's decision in *AirTab* on grounds that are fully applicable here.  As observed in *Nordstrom,* the court in *AirTab* was careful to emphasize that the case before it did not present "a situation where employers decided to funnel monies from a general account toward paying off company creditors instead of to beneficiaries." *Nordstrom,* 901 F. Supp.2d at 941 n.2 (quoting *AirTab,* 482 F. App'x at 69-70).  Rather, the facts in *AirTab* showed only that the defendants had failed or refused to make the employee fringe benefit contributions called for under a collective bargaining agreement, and the court was reluctant to view this breach of a contractual obligation, standing alone, as giving rise to a breach of fiduciary duty claim under ERISA.  *AirTab,* 482 F. App'x at 469-70.

The record in *Nordstrom,* in contrast, included additional evidence that avoided *AirTab*'s concern that an ERISA breach of fiduciary duty claim against corporate officers should not serve merely as a repackaged ERISA breach-of-contract claim that is properly brought only against the corporation itself.  In particular, this Court pointed to the evidence that the individual defendant in *Nordstrom* was the "sole signatory" on the corporate defendant's bank account, and that he had "elected to pay [the company's] general creditors instead of making contributions to the plaintiff funds." *Nordstrom,* 901 F. Supp.2d at 942; *see also Trustees of Abatement Workers Regional Local Union No.*

*207 Health & Welfare Fund v. Northwest Firestop, Inc.,* No. 11-13982, 2013 WL 2033622, at *7 (E.D. Mich. May 14, 2013) (finding that "[f]urther factual development is needed" to determine whether *AirTab* and *Future Fence* were distinguishable on the ground that the individual defendant "exercised the necessary authority or control of the management of plan assets such that he may be held personally liable for [the defendant corporation's] unpaid contributions").  Likewise, in this case, the unchallenged record shows that Defendant White was the sole operator of Defendant Grindall & White and managed the day-to-day affairs of the corporate defendant, and that the company elected to pay a number of creditors rather than devoting these company assets to the shortfall in employee benefit contributions.[1]  Just as this Court concluded in *Nordstrom* under similar facts, the record here establishes that Defendant White is personally liable as an ERISA fiduciary for the employee benefit contributions owed to the Plaintiff funds.[2]

**C.      Plaintiffs' State-Law Claim Under the MBTFA Provides a Separate Basis for Holding Defendant White Personally Liable for Grindall & White's Unpaid Employee Benefit Contributions.**

In Count II of their complaint, the Plaintiff funds advance a separate state-law

---

[1]In addition, while Defendant White testified that Grindall & White employed a bookkeeper, (*see* White Dep. at 5-6), nearly all of the checks issued to the company's creditors and other outside entities and individuals were signed by Mr. White himself, (*see* Plaintiffs' Motion, Ex. 5).

[2]To the extent that Defendant White contends that he cannot be held personally liable for Grindall & White's CBA-based employee benefit obligations under a veil-piercing theory, this Court has explained that such a veil-piercing inquiry is "unnecessary" if the record demonstrates that an individual corporate officer is subject to liability as an ERISA fiduciary.  *Plumbers Local 98 Defined Benefit Pension Fund v. M & P Master Plumbers, Inc.,* 608 F. Supp.2d 873, 880 n.3 (E.D. Mich. 2009).

basis for recovering against Defendant White under the MBTFA.  In his response to Plaintiffs' summary judgment motion, Defendant White identifies a number of purported deficiencies in Plaintiffs' MBTFA claim, including (i) that it is preempted by federal law, (ii) that Plaintiffs are barred from recovery under this statute by the doctrine of unclean hands, (iii) that Plaintiffs' cannot establish the "intent to defraud" element of their claim under the MBTFA, and (iv) that Plaintiffs have not established the requisite link, as purportedly required under the MBTFA, between payments to Grindall & White for specific projects and the non-payment of fringe benefit contributions on behalf of employees who worked on these specific projects.  Strictly speaking, the Court need not consider the viability of Plaintiffs' MBTFA claim, because this claim merely provides an alternative avenue for precisely the same recovery that Plaintiffs may obtain from Defendant White in his role as ERISA fiduciary.  Nonetheless, the Court briefly addresses Defendant White's various challenges to Plaintiffs' claim under the MBTFA, and finds that these challenges lack merit.

First, Defendant White contends that Plaintiffs' state-law claim under the MBTFA is preempted by ERISA or by section 301 of the federal Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  As to ERISA preemption, Judge Borman of this District held that ERISA did not preempt a MBTFA claim that was essentially indistinguishable from the one asserted by Plaintiffs here.  *See Trustees of Detroit Carpenters' Health & Welfare Fund v. D.P. Letscher Co.,* No. 98-75051, 2000 WL 1137709, at *5-*6 (E.D. Mich. July 25, 2000).  This Court concurs in Judge Borman's reasoning, and concludes

12

on the same grounds that Plaintiffs' MBTFA claim in this case is not preempted by ERISA.

Turning to Defendant White's claim of LMRA preemption, this challenge rests exclusively on the Eighth Circuit's decision in *Trustees of Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.,* 450 F.3d 324 (8th Cir. 2006). As Plaintiffs correctly observe, however, *Superior Waterproofing* is inapposite, as the court in that case held that third-party claims of misrepresentation **brought by the defendant employer against a union** were preempted by the LMRA. *See Superior Waterproofing,* 450 F.3d at 329-34. Consequently, the court had no occasion to consider whether § 301 of the LMRA might preempt any state-law claims brought by the plaintiff fringe benefit plans against the defendant employer arising from the alleged failure to make fringe benefit contributions, nor has Defendant White identified any other case that has addressed this question, much less held that such state-law claims were preempted. In any event, the Eighth Circuit distinguished claims "which require interpretation or construction of the CBA from those which only require reference to it," and it recognized that "[a]n otherwise independent claim will not be preempted if the CBA need only be consulted during its adjudication." *Superior Waterproofing,* 450 F.3d at 330. In this case, Grindall & White's obligation under the CBA to make fringe benefit contributions to the Plaintiff funds is uncontested. Against this backdrop, Defendant has failed to suggest why any interpretation of the CBA might be needed in order to resolve Plaintiffs' claim under the MBTFA.

13

Next, Defendant White's appeal to the doctrine of unclean hands evidently rests on the premise that the Union took unreasonable steps to collect amounts owed by Defendant Grindall & White to union workers and the Plaintiff funds, resulting in undue hardships that hastened the demise of the Defendant corporation.  Yet, as the Plaintiff funds point out, they are subject to a far narrower set of defenses than might be available in a suit between the Union and Defendants, and the doctrine of unclean hands is not among the defenses that may be asserted against the Plaintiff funds.  *See Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Service, Inc.,* 870 F.2d 1148, 1149 (7th Cir. 1989); *Iron Workers' Local 25 Pension Fund v. Allied Fence & Security Systems, Inc.,* 922 F. Supp. 1250, 1254-55 (E.D. Mich. 1996).  Moreover, Defendant White's appeal to unclean hands rests entirely on his own affidavit, which fails to provide a factual predicate for this defense.  Certain of the statements in this affidavit do not appear to rest on Mr. White's own personal knowledge, (*see, e.g.,* White Aff. at ¶ 11 (citing "reliable information" received by Mr. White that one of his customers, Northwest Public Schools, had "paid twice" for work performed by Grindall & White and "intend[s] to sue me")), and thus may not be considered in resolving Plaintiffs' summary judgment motion, *see* Fed. R. Civ. P. 56(c)(4).  In any event, Mr. White's affidavit indicates only that the Union might have failed to take full advantage of the receivable assignments given to it by Mr. White in order to pay down Grindall & White's obligations to the Plaintiff funds,[3]

---

[3]In their reply in support of their motion, the Plaintiff funds point to evidence that the Union attempted to collect on the receivable assignment in question, but that an attorney for the

14

and that the Union apparently devoted the entirety of the amount it collected under one of these receivable assignments to reimbursing the Plaintiff funds rather than paying Grindall & White's vendors and subcontractors.  Although Defendant White labels this conduct "unconscionable," (Defendant's Response Br. at 12), he fails to explain why this is so, nor does he cite any authority that would support the conclusion that the Union's alleged actions would suffice to sustain a defense of unclean hands.

Defendant White next contends that Plaintiffs have failed to establish that he acted with "intent to defraud," Mich. Comp. Laws § 570.152, as necessary to sustain their claim against him under the MBTFA.  Under the plain language of the Michigan statute, however, the requisite "intent to defraud" may be shown through evidence of "[t]he appropriation by a contractor . . . of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment."  Mich. Comp. Laws § 570.153.  In light of this MBTFA provision, the Michigan courts have held that "a reasonable inference of appropriation arises from the payment of construction funds to a contractor and the subsequent failure of the contractor to pay laborers, subcontractors, materialmen, or others entitled to payment," and that a plaintiff "need not prove what the [contractor] defendant did with the money if a reasonable inference of appropriation is

---

contractor that purportedly owed money to Grindall & White, Heights Heating and Cooling, insisted that no money was owed or could be collected under the assignment given to the Union. (*See* Plaintiffs' Reply, Ex. 3, 7/19/2010 Correspondence.)

15

present." *Livonia Building Materials Co. v. Harrison Construction Co.,* 276 Mich. App. 514, 742 N.W.2d 140, 144 (2007) (internal quotation marks and citations omitted).

The evidence produced by Plaintiffs in this case gives rise to a reasonable inference of appropriation, and Defendant White has pointed to nothing in the record that might rebut this inference.  As discussed earlier, the record here shows (and Defendant White does not dispute) that Defendant Grindall & White received payments on projects for which covered work was performed, and that the company, under Mr. White's direction and control, then paid out money to non-MBTFA trust fund beneficiaries while at least certain of these beneficiaries (including the Plaintiff funds) went unpaid. Plaintiffs further observe that these company disbursements included payments for credit cards, cable bills, utilities, and automotive services, as well as checks issued to Mr. White himself.  (*See* Plaintiffs' Motion, Ex. 5.)  This belies Defendant's contention that he "could have paid for all fringe benefits becoming due but for [the Union] taking control of all of Grindall & White, Inc.'s accounts receivable," (Defendant's Response Br. at 17), as the record shows that Mr. White elected to pay other creditors (and himself) with company funds while fringe benefit contributions were due and owing.  *See Livonia Building Materials,* 742 N.W.2d at 145 (finding that a presumption of misappropriation arose from the evidence that proceeds received from jobs were "disbursed on outstanding bills when monies became available without regard for the requirements of the MBTFA").  Moreover, to the extent that Defendant White suggests that employee fringe benefit contributions went unpaid due to poor economic conditions that left Grindall &

16

White unable to pay its debts and struggling to survive, the Michigan Court of Appeals has expressly stated that "the general assertion that there was not enough money 'to go around' is not sufficient to rebut the presumption of misappropriation." *Livonia Building Materials,* 742 N.W.2d at 145.  Accordingly, the Court finds that the record here establishes as a matter of law the requisite "intent to defraud" that permits a recovery against Defendant White under the MBTFA.

Finally, Defendant White asserts that Plaintiffs may not recover under the MBTFA absent evidence that links "labor for specific projects, payments made to the employer-contractor for that specific project, and delinquencies regarding the fringe benefits due from those identifiable received funds," (Defendant's Response Br. at 19), and he suggests that the record produced by Plaintiffs fails to forge this link.  Yet, as this Court has explained, "the fiduciary relationship established by the MBTFA arises at the time any monies are paid to the contractor . . . whether or not there are any beneficiaries of the trust at that time and continues until all the trust beneficiaries have been paid." *Nordstrom,* 901 F. Supp.2d at 944 (internal quotation marks, alterations, and citations omitted).  Moreover, "[o]nce a statutory trust is activated by payment into a building contract fund, the statute prohibits the contractor's use of moneys received for a particular project for anything other tha[n] first paying laborers and suppliers on that project."  901 F. Supp.2d at 944.

Again, the record in this case shows that in the November 2009 - March 2010 time period during which Grindall & White was delinquent on its fringe benefit contributions,

17

the company received payment on a whole host of projects.  (*See* Plaintiffs' Motion, Ex. 4.)  These payments gave rise to a "statutory trust," as well as Defendants' fiduciary obligation to hold and disburse the proceeds of this trust for the benefit of the beneficiaries identified in the MBTFA — *i.e.,* the laborers, subcontractors, and materialmen who worked on these projects.  *See Nordstrom,* 901 F. Supp.2d at 944.  The record further demonstrates that during this same time period, the corporate Defendant, under the direction and control of Defendant White, made disbursements to a number of general creditors (and himself) rather than trust beneficiaries, including the Plaintiff funds.  The Court is confident that this is sufficient evidence of linkage between labor provided to Grindall & White for specific projects, payments received by the company for these projects, and delinquencies in contributions to the Plaintiff funds to sustain a claim against Mr. White under the MBTFA.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' October 31, 2012 motion for summary judgment (docket #29) is GRANTED.  In light of this ruling, IT IS FURTHER ORDERED that within ***fourteen (14) days*** of the date of this opinion and order, Plaintiffs shall file with the Court and serve on Defendant Jeff White a proposed judgment consistent with the Court's ruling.  If Defendant White wishes to object to the entry of this proposed judgment, he must file and serve any desired objections within ***seven (7) days*** after Plaintiffs' service of their proposed judgment, and

18

Plaintiffs may file and serve any desired response to these objections within ***seven (7) days*** after Defendant's service of his objections.  The Court will then address any

objections and enter an appropriate judgment in favor of Plaintiffs and against Defendant White.

  SO ORDERED.


       s/Gerald E. Rosen      
       Chief Judge, United States District Court

Dated:  September 30, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2013, by electronic and/or ordinary mail.

       s/Julie Owens      
       Case Manager, (313) 234-5135